21-12-44 Oakland Tactical Supply LLC et al versus Howell Township, Michigan. Oral argument, not to exceed 15 minutes per side. Mr. Patterson for the plaintiff's appellate. Good morning, your honors, may it please the court. Pete Patterson for the appellants. I've reserved five minutes for rebuttal. The district court's decision in this case must be reversed for two reasons. First, the district court erroneously held that only a total ban on all shooting ranges in Howell Township could even implicate the second amendment. And that was an error. Second, the township's efforts to rehabilitate the district court's decisions on alternative grounds fail. Turning first to the district court, again the district court said. And the motion, the denial of the motion for reconsideration. Doesn't the issue get framed as whether your clients have some kind of protected right to operate an outdoor rifle range that's a thousand yards long? Isn't that, as the case comes to us on appeal, isn't that the more specific issue here as opposed to any total ban? Well, we're appealing the denial of the motion to dismiss. And it is an opinion at page ID 2090. The court said plaintiffs have failed to state a second amendment claim because their allegation that defendant bans all firearms ranges within the township is inappropriate. Right, but then in your motion for reconsideration, I thought that, I'm not saying it was you. Right, no, no, understand, understand. But I think that counsel's argument was just, hey, judge, you've misunderstood our claim. Our claim is not about just a total ban because, in fact, there appear to be other gun ranges in Howell Township or Howell. To the contrary, it's that you're banning a 1,000 yard outdoor rifle range. And then the court says, well, there's no second amendment right to that particular kind of range. Isn't that the, just to, you know, housekeeping, isn't that the issue before us today? The issue is we said in the complaint in the response to the motion to dismiss that there's a de facto ban on outdoor ranges, including a 1,000 foot outdoor range. But there's a de facto ban on outdoor. Well, the one that you're asking for is 1,000 yards. That is the furthest extent of it. But the planned range is going to have handgun range, shotgun range, rifle ranges, and in addition, this lengthy range. And we can't do any of that under the Howell Township ordinance. And that was the, the district court, again, we allege there's a de facto ban on outdoor ranges. And the district court said, well, perhaps if you had alleged a ban on all ranges, you could have a second amendment claim. But they don't do that. I mean, there are, aren't there a couple ranges in Howell? There are no ranges in Howell Township. There are indoor ranges in the city of Howell, which is a different. It's right there, but it's a different jurisdiction. And it's a seven circuit. Well, we can talk about that. I mean, I live, you know, I happen to live 30 minutes from Howell. And Island Lake Recreation Area is halfway between us. Obviously, you have just a stellar outdoor range there. It's only 100 yards, I guess. But, you know, all kinds of skeet and, you know, and so on is very popular. And so, and you've got a couple indoor ranges in Howell. And, I mean, I understand your point about sort of township lines. But, you know, how impaired really is a second amendment right? It's a lot easier to go to a gun range in Howell than it is in my town, Novi. I've got to drive farther than the plaintiffs here are talking about. So, I mean, how is this really such an impairment? Well, Your Honor, as the seventh circuit said in Ezell, a jurisdiction can't defend a restriction. And this was quoting Supreme Court precedent in Chad by saying, well, you can exercise your right somewhere else. So, you have to look at the jurisdiction. I mean, that's kind of almost a slogan. I mean, let's say Howell Township allows your clients to do this outdoor range. And Howell Township's a pretty big acreage. And let's say just somehow the township divides 10 years later. And now it's two townships. Does the new township that doesn't encompass your client's range, do they have a constitutional obligation now to put in another range there? Could someone come in and make the same claim? They would have whatever restrictions they have on ranges would have to satisfy the second amendment inquiry. So, they would have to justify it. But you would not be able to rely on the neighboring jurisdiction. And the reason why, and if I could explain the... If I could explain a rationale, I'll try to give you a rationale, Your Honor. And that is because the jurisdiction essentially is relying on a neighboring jurisdiction complying with the Constitution. And you create an incentive for these jurisdictions, if they want to restrict things, to say, okay, I'm going to restrict something. And then the neighboring jurisdiction with the range, well, then they're locked in because all the jurisdictions around them have restricted ranges. What about like the Upper West Side? I mean, do they have an obligation? I don't mean to be flippant. No, no, I understand. We have to look at implication. Right. You know, does... I mean, do they have to zone so that, you know, in the Upper West Side within a 30-minute subway ride or something, you can bring an AR-15 and shoot it 1,000 yards somewhere? I mean, is that... Your Honor, what the historical record shows, and Heller says we look at history, and it's the Abbott quote that Heller quotes as a treatise, says that your right is to train with firearms in safe places. So any historical justification, and Heller said we looked at historical justifications, is you look to safeness. So if there is a jurisdiction in the Upper West Side, you know, D.C., a wholly urban jurisdiction, that can convincingly show that you can't safely have a range here, then that's a different case. But there's no, certainly, evidence here that it would not be safe for... That's a good answer. ...to be built here. I mean, this is doctrinally pretty murky or, you know, it's sort of undeveloped. And so, I mean, the Supreme Court says we have a core Second Amendment right, which is basically a right of self-defense, right? I mean, a right to bear arms in defending yourself. That's kind of the whole gist of Heller, as opposed to a, you know, militia-based right. Is that fair? Well, what I would characterize Heller as saying, you have a Second Amendment right to keep and bear arms. And that encompasses certain lawful purposes and, you know, certainly the militia purpose. And then the court said at the founding, people undoubtedly valued it for hunting and self-defense, perhaps even more. Well, I mean, the court says it's an individual right unconnected with military service. Right, so the right is to keep... Or militia service. Right, so the right is to keep and bear arms. And so, but I don't think then you look at the purpose and limit the right. So, for example, in Crawford... Well, I mean, okay. But, I mean, my point is that Heller's determination that this is an individual right unconnected with military service at page 582, that seems to cut both ways. I mean, so you have... We have a right individually. We don't have to be part of some organized militia to bear arms, primarily in self-defense. We don't have a Second Amendment right to train as a militia because that's not what the right is, as described in Heller. Is that common ground so far? I'm not...  Let's say I assume... Assuming that's correct, Your Honor. But the purpose, Heller said the purpose, the reason it was put in the Second Amendment was because of the militia. Okay, but I'm talking about the right, Your Honor. So that people can become familiar with arms. Yeah, but this is the right, which is an individual. I mean... Right, to use them for lawful purposes, including training. And so, if you can lawfully possess a firearm... Well, it's connect home and hearth and all that. Heller in no, it said hunting, no instance said it was limited to the home. It said the core is self-defense, not self-defense. So that's the core. But that's the core, but that's... The right has more than the core. So, for example, in the First Amendment context, the core is political speech. I think most people would agree. And yet, zoning laws that affect adult entertainment, which everyone admits is at the periphery of the First Amendment, gets heightened scrutiny. But isn't that intermediate scrutiny? It's been a while since I had one of those cases. It is intermediate scrutiny if it is truly a content-neutral time, place and manner regulation that is not operate or intended to actually decrease protected activity, but just to route it. And even if we get intermediate scrutiny here, on this record, we're on a motion to dismiss. All they have is a statement by the planner that this use may introduce certain issues. They've got no evidence that it actually would. It's just the sort of evidence, as in Eazell and Drummond, that the court said is not enough to... I mean, I definitely understand your argument on that. As far as self, I mean, is it fair to say that a self-defense right cannot support a 1,000-yard outdoor rifle range? I would not say that, Your Honor. I mean, we had an example that we used... There's no way you can shoot somebody at 1,000 yards and it's self-defense, right? Well, it could if you were in a, like you said, like a malicious setting or something like that. But most likely, you're not going to run into that scenario. But the Second Amendment is most likely you're not going to have to defend yourself at all with a firearm. And these firearms... I mean, you can see how, I mean, the idea, at least to the extent the Second Amendment is about self-defense. I know that's not all it's about. But the self-defense part is really attenuated. I mean, to say that a 1,000-yard outdoor range is indispensable to exercising the self-defense right in the Second Amendment. I mean, can we just... Isn't it fair to say that's pretty attenuated? It is a bit. Maybe it's not. You know, at the self-defense in the home, yes, it's a bit attenuated from that. But I would submit being accurate at a longer range is also going to promote being accurate at a closer range. Sure. And furthermore... And irrelevant, but it's... Right. And at the founding, I mean, the source... And I'm sorry I'm past my time. No, actually, it's all right. I'm trying to be responsive to your Honor's questions. It's a hard case, and there are a lot of, you know, questions, frankly. Right. So the historical... I mean, it's their burden to show as a history that this conduct is unprotected. And they have to show conclusively under this Court's precedent that this conduct is unprotected. Well, on that point, I mean, here's real quick, maybe this will all take in this part. How do we distinguish, in your view, between core Second Amendment activity and non-core activity that's still part of a Second Amendment right? Okay? That distinction between core and non-core. And then how do we distinguish between the non-core yet Second Amendment stuff and stuff that is simply not protected? So it's two different distinctions that are going to bring different inquiries from the Court. And what's your take? Well, I think the core, non-core distinction is an artificial distinction that, frankly, is not supported by Heller. I mean, Heller mentioned a core lawful purpose, but it didn't then limit the right by that. It's in or it's out? I think it's in or it's out. Okay. And then, you know, so there are different ways to approach it. So under Heller's approach, and as some courts or some judges, mostly in dissenting opinions, since Heller has said, is that it should be a purely history and text-based approach. So you look at history, and then you find historic justification. And here we say, it's safety. You can limit range training for safety. And so you say, has the township proven that it needs these limits for safety purposes? And if so, then maybe it connects with that historic justification. Now, if you do the two-step analysis that this Court and other courts of appeals have adopted. I joined an opinion, Tyler, that said don't do tiered, but the en banc court disagreed. And so we have to do the approach And our submission is that in this case, where we say it's a de facto ban on outdoor ranges, even courts that do tiers like the D.C. Circuit and the Wren case have done a more categorical approach when faced with a law like that. So we would submit that you could do that. But then under an intermediate scrutiny, under a scrutiny approach, what the courts would say is you look at how burdensome is the restriction on the right. And you can maybe analogize to the First Amendment. And the only thing that your clients have a hard time doing is shooting 1,000 yards at a range where you have to pay. I mean, there's a lot. I mean, I don't know. What about the fact that there's plenty of farm? I mean, I've shot on a farm, I don't know, pretty far. You know, if you have, if you can see the crest and you see where it's going to strike, you're fine. I mean, there's a lot of that in Michigan. How do we factor that in to whether, you know, there's an impairment here? I think that frankly undermines their case, Your Honor. And the reason why is they're saying we need to do that. We're concerned about safety. We're concerned about things like this. And yet they're saying, we're fine with you doing all the uncontrolled shooting you want. All you can't do is have a firing range and have it run safely and operated. And the reason why that doesn't. Well, people do this. You and I both know that people do this very carefully. Right. I understand that they do it carefully. Not a bunch of, you know, cracking, well, anyway. But some people, there are allegations in the complaint that some people are doing it uncarefully and that there are, you know, paragraph 11, I believe, in the complaint about hearing gunshots and having shots go across property lines. I should go to my place in northern Michigan. There's gunfire 365 days a year. But the point that I was going to make is that in the, so even if we're going to say the lowest level screening that could apply, First Amendment, analogized to time, place, and manner zoning regulations, once there's a burden, and so here there's a burden, we can't run not just a thousand yard range, we can't run any outdoor range at all. So we can't run the range. So then they have to justify that under intermediate scrutiny and have to show there's a substantial interest and that it's not overly broad. And if they're allowing uncontrolled shooting, we just submit they can't meet that, especially at the pleading stage. All right. Great, great. I just have one final question. That's all. So you cite in, I think, your reply brief, historical support for like 200 and 300 yard ranges. So this dovetails what we've been talking about. Probably more than we like to, the thousand yard range, 10 football fields, I mean. What would support the right to this thousand yard range? Or maybe 2,000 or 3,000, whatever. I mean, the historical support you said is like much shorter. We did cite a 900 yard range. You got a 900 in there, okay. Well, that's close to a thousand. No, but no, seriously, your honor. So here's, so first of all, there's a question of burden. So it's their burden to show that it's unprotected. And our submission would be that you have a right to train with arms. And if these arms can fire that far and you can train with it safely at that distance, presumably you would want people training at that distance. And they don't have any evidence to the contrary. And here also, we would like to do 1,000. We would also like to do, you know, 250, 500. We can't do that, so. Okay, I appreciate it. Thank you. Thank you. Oh, sure. I have one more question. Yeah, all right. If I took that a long list. Thank you, your honors. Tom Maher for Howell Township. And we've taken, we've given Mr. Patterson a little bit of extra time. If you think you need that, as long as you're reasonable, that's fine. Thank you, judge. Your honor, I want to jump ahead of my outline because of the questions that were just asked. And I'd like to point out a quote from plaintiff's reply brief, going to the question of, isn't this case really about a 1,000 yard shooting range? This is from page two of the reply brief. They say the central thrust of plaintiff's case is that outdoor ranges are required for the full range of training in which plaintiffs desire to engage. And I really think that says a lot about what the plaintiffs want. They want the full range of training. They don't want just outdoor training. They don't want just long distance training. They don't want 1,000 yard training. They want the full range. What do you think that means? I don't know what it means, but I think that Judge Cole just asked a good question. 1,000 yards, 2,000 yards, 3,000 yards. But I mean, I don't know. More than 1,000 yards. I mean, that seems to be what, that seems to have been the focus since the motion for reconsideration. I agree. And 1,000 yards, we believe, is not something that's supported by the Second Amendment. Why is that? Because I think that there's no historical support for it. I don't think it's our burden to try to prove a negative. That is that somewhere in history, they said that 1,000 yard ranges were not allowed. Well, I mean, how about this theory, which is that, you know, the right to bear arms is the right, which I think Heller says, to bear arms that are like commonly used. Those obviously include rifles now. And so the right to bear arms is the right to use, I mean, and Heller is very specific about this. It's not the right to use muskets and that sort of thing that were in use at the time. It's the right to use weapons that are commonly in use. And that includes rifles, which can easily shoot accurately 1,000 yards. And so the Second Amendment right includes the right to bear rifles that can shoot 1,000 yards. So why don't they have a right to practice doing that? That's, you know, within the Second Amendment. Well, and then the right where? In Howell Township, wherever they want to? And you're saying... Well, okay, but I think what they would say is that you have to show, you have to come forward with an important interest that would support your zoning restriction against engaging in that Second Amendment activity. And then we look at, you know, whether that's bona fide and whether it's narrowly tailored. Not strict scrutiny necessarily, but some kind of heightened scrutiny. I mean, why isn't that a fair analysis in this case? Because I don't believe we should get to the scrutiny. I believe that if we do get to scrutiny, it will be some heightened scrutiny. Intermediate scrutiny is what the Sixth Circuit is using right now. But I believe at some point you have to say, just because it's alleged, do all these litigants have to go through Rule 56 resolution, regardless of the expense, regardless of the time it takes, regardless of the depletion of resources, regardless of the size of the township throughout the state of Michigan. You're familiar with Livingston County. There's Howell Township. There's Deerfield Township. There's Marion Township, the village of Pinckney. We're talking about a lot of rural areas where shooting takes place just as you mentioned. Outdoor shooting, target practice, training. This is all available in Howell Township. So I don't think we should lose sight of the fact that to whatever extent training is allowed for 1,000-yard guns or whatever you want to use, training is provided for in Howell Township. Ranges are provided for. It was said that there are no ranges in Howell Township. I think literally that's correct, that there are none. But the ordinance provides that there can be. There can be indoor ranges. And there can be, by accessory use, there is outdoor training. There's hunting. There's shooting. So, I mean, in Howell Township does not restrict the right of a private landowner to shoot a rifle 1,000 feet. You know, given like certain distances from buildings and homes and that kind of thing. Is that right? Absolutely. In Howell Township, you can possess a gun without a permit or a registration because that's the state of Michigan's issue. In Howell Township, you can shoot a gun. In Howell Township, you can hunt. You can target practice on your property. You can shoot long distance. Howell Township does not ban shooting, long distance shooting, practicing, training. They just don't allow on this piece of land the 1,000 yard range that these folks want. Well, does the township have a mechanism or procedure for issuing these special use permits or rezoning pursuant to request? And if it does, I don't see anything in the record that there was a request made or that occurred. Now, I know there's some argument there was an impasse to some extent, but... The case starts with a request for rezoning by a man named Mike Page, who's not even a resident. He wants the agricultural area rezoned to, quote, allow shooting. Okay. And there is... Not rezoned, right? He wants to redefine what's permitted in agricultural residential zoning. I think it was actually a request for a zoning text amendment. Yeah, so what is that? Yeah, is that, you know... I think essentially what you said is correct. It would still be agricultural zoning. No, it's a categorical change, not an ad hoc, you know, not just like a variance. And that was part of his problem. And if you look at the attachment to our answer, which is the planner's report, they say you're asking for relief that would allow shooting throughout the agricultural zone, as opposed to if you were focused on your property and seeking conditions. Right. That's something that would be easier to work with. Now, would that be a special use permit, or is that just a rezoning of that particular property owned by... It could be a special use permit. It could be a variance. There are different mechanisms within an ordinance. And the important thing to remember in any land use case is a landowner or developer or the Oakland Tacticals of the world can come to us and make a request and we can try to work with them. When they make a request that is simply not workable, allow shooting throughout the agricultural district, we have to say no. But if he'd come looking for conditions, maybe it could have been worked out. If he'd come looking for a special use permit, maybe it could have been worked out. If not, and if they're not satisfied, litigation is a remedy. Why is it... I mean, do you think that that bears on our decision here? I mean, the district court said it was not ruling on exhaustion grounds or something. I mean, do you think that that ought to be part of the analysis here? No, I don't think in this case that exhaustion or ripeness is at issue. Because I think it morphed from an as-applied challenge to a facial challenge. I'm sorry, can you say that last part again? I think the case morphed to change from what was an as-applied challenge in a complaint to iterations of the complaint later, the focus became a facial challenge. All right. I think I understand that. Yeah. So what's the impact of the amendment, recent amendment, in terms of your view of the relief that's been requested by Oakland? I don't believe that there is an impact. And certainly I understand, and it was brief, that the concern was whether the new ordinance would moot the old ordinance and thus moot the case. The existing ordinance, at the time Judge Friedman made his decision, allowed for ranges, as I've described, both indoor and outdoor, plus accessory uses. The new ordinance, Ordinance 285, makes that even clearer. But we have not put to you an argument of mootness. We haven't suggested to you that, you know, now we win because the ordinance has been changed. There would be problems with that argument that we don't have to face, because the existing ordinance itself allows for the ranges. And I really am concerned about this leapfrog that there's a second amendment right to a 1,000-yard range without considering the fact that ranges are allowed. Shooting is allowed. If that's your second amendment right, you have a place to exercise it. And, you know, whether I were to argue today that there should not be a second amendment right to 1,000-yard shooting, that Heller doesn't say that, Easel doesn't say that, they're in completely different contexts. Leaving that argument out of it, we provide for the right. All right. Is the complaint, as I recall, asks for injunctive and declaratory relief as well. That's still on the table in your view? I'm sorry? Injunctive and declaratory relief. I think that that's requested in the complaint. That's correct. Okay. That's not moot in your view at this point? I'm not going to argue that anything is moot. Certainly, the damages claim would not be. But I'm relying on the existing ordinance, and I'm saying we were right then and we're right now. So, with just trying to figure out the import of the fact that the township freely allows all kinds of long-distance shooting, target practice, et cetera, on private property. And just trying to think that through. So, obviously, if one owns, you know, a large piece of property, you've got 150 acres or something, you can, there's no, the absence of this outdoor range, presumably, doesn't have any impact on that person's ability to exercise, let's just say hypothetically, this Second Amendment right. I agree. But what that person can't do is sell to, but there are people that don't have that kind of property. And so, what the township is preventing is allowing those owners of that kind of larger property to basically, you know, allow others to come onto their property for a fee and shoot. Is that fair? I'm not positive about the for a fee. I mean, doesn't it make it a, you know, a gun range? Well, it would make it a commercial use, and you could not have a commercial use in most agricultural zones. But I don't know that it would make it a gun range. So that's why I hesitate on my answer. I guess, I mean, but maybe to net it out, I mean, the freedom that the township allows property owners to shoot weapons on their property arguably takes care of any Second Amendment concern as to them. But what about folks who don't own that kind of property? They're still, it doesn't help them. Is that fair? I understand. But there are people who don't own property where a mobile home park could be developed or an apartment complex could be developed while others do. And so the law provides for the use, not necessarily where you live, but it provides for the use. And so, yes, there are people who live, let's just say, in a subdivision who would like to shoot. Can they go to their neighbors and shoot? I don't know. Can they go to a 1,000-yard range and shoot? Not in Howell Township. Can they go somewhere else, perhaps? If we were to apply some level of scrutiny to this, the interest you would assert in support of the restriction here, the zoning, the limitation on usage for agricultural residential is simply what the consultant said about, could create traffic and noise and that kind of thing. Is that inaccurate? It's not a trick question. I'm just trying to understand if we got to that point. And so I think we would agree that the first step, is it a substantial governmental interest? I believe that's established by the cases that we've given you, both from the First Amendment and from other areas. Land use, to keep it short, is a substantial governmental interest. The next step is the regulations that you have, are they a good link? To serve that interest. The record that you have so far is a planner's report. And I'm not going to suggest to you that that record is sufficient in and of itself to show that fit. So if we got to the point, this is purely hypothetical. Don't read into it. But if we got to the point where we were applying that sort of scrutiny, I mean, would you agree at this early stage in the case, it's 12B6, right? That we would remand to the district court to develop that issue of fit. I can't tell you how hard it is for me to concede anything during oral argument. I know, I've been there. So I think that's accurate. Given the record, and all we have is a planner's report, that if we're dealing with fit, that might be remand. Well, I sincerely appreciate your straight up answers, that you're not fencing with me about the hypothetical and so on. I do. And Judge, I think really, regardless of the rest of my notes, I think that these are the issues that seem to be at the fore. And I'm happy to answer any other questions. Well, I mean, can you maybe just to recap for a minute or two, can you just concisely state why you think this activity is not protected by the Second Amendment at all? I gather you think it's outside the bounds of the Second Amendment. I do. And what I'm hearing you also say is there's no reason for me to again, state that if it's protected, we allow it. That's to the side. Right. But is it not? This is just sort of the threshold question. Is this activity generically, 1,000 yard rifle range privately operated? Is that within the Second Amendment protections? Or is it simply just not protected at all? I say it's not protected at all. Even if training is protected, even if the right to bear arms a pistol, for example, along with that goes the right to become proficient. And along with that goes the right to train. I don't think the Second Amendment should stretch out indefinitely to 1,000 yards, a mile, 2,000 yards. I don't think that's where the protection goes. I don't have an answer for where it stops. I am convinced that 1,000 yards is beyond the pale. Just to sort of give you a bit of a counter on that, why wouldn't a natural boundary, so to speak, for the protection legally and almost sort of physically be the effective range of commonly used weapons? Do you mean a physical natural boundary, like the size of the land? I'm sorry, of the Second Amendment right. In terms of, the right allows you to shoot a certain distance. Practice at a certain distance. Why wouldn't the distance be the effective range of commonly used long arms? My concern there is that a commonly used long arm changes with every day of technology. And if common today is 1,000 yards, I don't know if it's 5,000 yards a week from now. I don't keep up with that kind of technology. But I think it's a mistake to say common use when every day and every week and every year common use means something different. OK. I appreciate your argument, Sir. OK, thank you. You know, Mr. Patterson, I mean, I know it's maybe not technically part of the analysis of the case, but you know, why wouldn't your clients just ask for a variance rather than sort of ask for a change that requires the township to allow that same activity throughout two-thirds of its acreage? If you want to have the 352-acre gun range by the quarry, why not ask specific to that? I mean, in other words, you know, I mean, ask that before you make a federal case of it. I'll tell you why, Your Honor. Section 22.07F of the code says that under no circumstances shall the Board of Appeals grant a variance to allow a use not permissible under the terms of this ordinance in the zoning district in which the variance is located. Isn't that what a variance is? No, so they're saying, well, you can't, maybe you can't meet the setback requirements or you can't meet some technical requirements. We can vary that. But what we can't vary is whether the use is allowed in the district. And that's why in the complaint, we allege that they advised us to seek a change to the zoning ordinance because that's the only thing we could do in order to do this use. Mr. Neger talked about trying to get a special use permit. Yes, no, and they conceded again in the response to the motion for reconsideration at 2163, no special use is available in the AR district to operate the proposed use described by plaintiffs. Okay. So there is, there's no other scenario and that's why they advised us to do this. And, you know, the, the request, When you say this, are you talking about the text? The text amendment. Why they said, seek an amendment to the ordinance because that's the only way we can do it. And, you know, the challenge, we're not saying that it violated the second amendment because you don't allow this as a use as of right in the AR district. We say invite your current ordinance, both facially and as applied, violates the second amendment because it puts restrictions on firearms. Perhaps one remedy for that violation would be to allow this as a use as of right in the AR district. There are potential, if they have concerns with that, and that's what the planner's report said, at 1141, where they said this may cause noise, traffic or other problems, the very next sentence said, if you're concerned about that, maybe do it as a conditional use. And we're not opposed to that necessarily, but they didn't do that. So that's something you could ask for. I don't know what these things are. Again, it would have to be rezoned to allow that. They would have to amend the ordinance. And that option was before them when they were presented with this and they didn't do it. So there's no avenue available that does not involve amending the zoning map or the zoning ordinance. So it's... When you saw... I mean, I'm just trying to infer what the zoning law is, but you didn't seek a conditional use. You saw it flat. Conditional use, I would surmise that it's permitted in, say, the AR district only upon specific approval of the township. It's not categorically ruled out, but in order to be able to do it, they've got to approve it in that instance. If you look at the document, we said what we want is to allow shooting in the AR district. Right. But I guess it sounds like what you asked for in this so-called text amendment is a change that would categorically allow this activity in all AR zoning areas without any further approval. That's... And it sounds like there might have been a middle ground of, you know, asking for conditional use where upon specific approval you can do it, but that doesn't necessarily mean it's a matter of right throughout the township. We didn't specifically ask. That's how it was construed. If you look at the application, it doesn't specifically say use as of right, use as conditional use. And in fact, in the planning commission meeting, this is at 60-3, page ID 1258, when Page was challenged about, okay, we need to put conditions on this. He said he would want to put those conditions in the text. So, and just to back up, I mean, we could have brought this case without making any request. I mean, they're not saying there's any finality or rightness concerns. Sure. But we're saying if you want to fix this, here's one way you could fix it. And, but they're not limited by that. Under the code, they have the power to sua sponte, make something if they say, and this is what the planner told them. They said, if you're concerned about making this a use as of right, you might want to consider making it a conditional use. All right. Well, let me ask you this question. I mean, if your concern here is simply to get this range at this quarry, would you, speaking for your clients, be open to mediating the case with our circuit mediator and try to work that out? Or is this about something bigger? It is about this. I believe there has have been a lot of efforts below to do that and to try to work this out. And it hasn't worked. So I don't believe that. But would you be open? Would you be open to that? I mean, are you open to trying to have a, you know, sort of an agreement that would allow you potentially to explore the possibility of an agreement that would allow your clients to have the range where they want to have it. Um, without, you know, making larger changes to the city's or township's ordinance. Or is this, like, frankly, a test case of some kind? No, no, it's not a test case. If we could have that and nobody else could, that would be great for our business. You know, so, so yes. But I, we wouldn't want to do it if it would not be potentially productive. Well, if the township is not. Mr. Meager, can we ask you, sir? Is that something you would be interested in exploring? It's not compulsory. It's just, you know, just want to ask. The answer is yes. I always favor compromise over litigation. I don't want to create false optimism. Yes, I prefer compromise over litigation. Yeah, well, we do have a pretty experienced mediation department here in the circuit. I know there have been efforts at the, it sounds like at the district court level. But if you think it's productive, I mean, we, it gives you a chance to be the, you know, architect of your own destiny here. Possibly, or at least explore further discussions. I mean, it's the, we're not involved in, you know, the mediation process. We're completely separate from that. But it's, you know, I'm not, we're not pushing it. But if it's something that might be productive. Again, not wanting to create false optimism because land use is difficult. Sure. Far different case. I've worked on it. I'm at my community and I'm not. Understood. Okay, well, it sounds like it's something you're at least open to considering. Maybe you need to consult with clients first. But you can contact our mediation office. Well, I mean, I think we can, yeah, we can have them reach out. Yeah, I mean, so, you know, I mean, there's no, we're not twisting your arm. But I mean, I hear on the one hand, you know, you never asked for a special use or whatever it was. On the other hand, I assume your concern is to get the range for your clients. Yeah, it's been several years. And just, I guess we would be concerned for the additional delay. But if there were legitimate chance that they would allow this. But as I've said, the reason why we didn't ask for those things as I went through is they're not available. So we did what we were advised to do. Okay, well. We could have our mediation office reach out to you. You don't have to pursue it. This is about really just trying to. No, I appreciate that. Help the parties here, you know. Then that might be something. Yeah. I mean, you know, you can, it can go as far as it goes. And if it doesn't work out, that wouldn't be the first time. But sometimes it does work out. It doesn't work out. I mean, you don't want to be litigating this forever, you know. And you don't want to just lose. Absolutely. And there's risk for everybody. Yes. You know. Yes. Certainly. Okay. Yeah, we'll get there. Anyway, I didn't mean to derail the discussion. That makes sense. I'm well past my time. I don't. So, you know, if your honors don't have any more questions, I'm happy to. I don't. I don't have any more. So we'll contact the mediation folks. They'll reach out to you. And we'll get word whether things are eventually productive or not. That work out? Yeah. All right. Thank you both. Thank you for your arguments. Again, in the briefing and the supplemental briefing, we appreciate that. So we'll take the case under submission, understanding, of course, that you'll hear from the mediation office. So that completes our argument calendar. Roy, you may adjourn court. This honorable court stands adjourned. Thank you, Roy. Thank you.